JOHN S. COVINGTON, Judge.
This suit arose out of a vehicular collision on June 6, 1984 in Houma, Louisiana. Ms. Teri A. Theriot (Theriot) and her insurer, Dairyland Insurance Company (Dairy-land) were named as defendants in the original petition. By supplemental petition, plaintiff named his insurer (also Dairyland) pursuant to the uninsured/under-insured provisions of his policy and Great Plains Insurance Company (Great Plains), his employer’s liability and uninsured/under-insured insurer. Plaintiff’s employer, Terre-bonne Parish Consolidated Government (Terrebonne) filed an intervention, alleging it “is subrogated to the right of the plaintiff herein against the defendants to the extent of the [worker’s compensation benefits, including medical expenses] payments made by the ... [employer] sufficient to reimburse the intervenor for all sums paid to or on behalf of the plaintiff.” Plaintiff subsequently amended his petition by alleging Great Plains provided $500,000.00 uninsured/under-insured (UM) limits.
Plaintiff and Great Plains filed motions for summary judgment to determine the extent of UM coverage, plaintiff asserting coverage of $500,000.00 existed and Great Plains asserting only $10,000.00 of UM coverage existed. Both motions were heard on February 19, 1986 and taken under advisement; on March 3, 1986 plaintiff’s motion for summary judgment was granted and Great Plains’ motion was rejected.
Bench trial on the merits was held March 10 and 11, 1986. The trial judge gave oral reasons for ruling in plaintiff’s favor on March 11, 1986, fixing plaintiff’s damages at $646,439.95, but reducing that to $581,-795.96 based on the finding that plaintiff was 10% comparatively negligent. Expert witnesses fees and costs of certain medical records were taxed as costs of court and those costs, plus other costs of court, were cast against Great Plains and Dairyland in the proportion of 75% and 25%, respectively. Formal judgment was signed March *41 17, 1986. Further, judgment was rendered for intervenor Terrebonne for $89,225.17.
Theriot’s liability insurance provided limits of $10,000.00 and plaintiffs UM insurer provided limits of $10,000.00.
Great Plains devolutively appealed the March 3, 1986 judgment granting plaintiff’s summary judgment and suspensively appealed the March 17, 1986 judgment. Plaintiff answered the appeals, seeking, inter alia, an increase in the general damages award from $300,000.00 to $500,000.00 and the future medical expenses award from $30,200.00 to $75,000.00. In his original brief in this appeal plaintiff expressly abandoned his assertion that the general damages and future medical awards were inadequate. Dairyland did not appeal. Instead, Dairyland deposited into the registry of the court the amounts awarded under both Theriot’s liability policy and plaintiff’s UM coverage, with legal interest on each $10,000.00 awarded and its fixed percentage of court costs.
Terrebonne answered Great Plains’ appeal, also seeking an increase in the future medical expense award and to have all future worker’s compensation benefits, including medical expenses, paid to or for plaintiff, reimbursed out of plaintiff’s award as a first preference. Terrebonne and plaintiff, in their separate answers to Great Plains’ appeal of the March 17, 1986 judgment, sought to have Dairyland cast for legal interest on the entire award from the two separate dates of judicial demand (as liability insurer and UM insurer) rather than on the two separate awards of $10,-000.00. We have previously granted Dairy-land’s motion to strike those portions of Terrebonne’s and plaintiff’s answers to appeal which sought to hold Dairyland responsible for legal interest on the total award of $581,795.96. Giroir v. Theriot, 498 So.2d 762 (La.App. 1st Cir., 1986).
ASSIGNMENTS OF ERROR
Great Plains assigns as error the trial court’s (1) granting summary judgment declaring Terrebonne’s liability policy issued by Great Plains provided $500,000.00 UM coverage and (2) rendering judgment against Great Plains for $500,000.00 plus legal interest from July 3, 1985 rather than awarding $10,000.00 plus legal interest from that date.
Terrebonne assigns as error the trial court’s (1) failing to award legal interest on the $89,225.17 awarded intervenor, (2) failing to order that intervenor be paid “in preference and priority” to the claims of plaintiff, and (3) failing to award intervenor “reimbursement of sums paid post judgment, but prior to the payment of judgment.”
UNINSURED/UNDER-INSURED MOTORIST COVERAGE
La.R.S. 22:1406(D)(l)(a) states in part the law governing the “issuance of uninsured motorist coverage in this state” as follows:
No automobile liability insurance ... shall be delivered or issued for delivery in this state ... unless coverage is provided ... in not less than the limits of bodily injury liability provided by the policy, ..., for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, ...; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. ... Any document signed by the named insured or his legal representative which ... selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
In A.I.U. Insurance Co. v. Roberts, 404 So.2d 948 (La.1981), the Supreme Court stated:
Under Louisiana law, uninsured motorist coverage is provided for by statute and embodies a strong public policy. Therefore, the question of uninsured motorist coverage must be determined in light of La. R.S. 22:1406.
*42 By way of a footnote the Court stated that
“Reference to ‘uninsured motorist coverage’ in this opinion should be deemed to read: ‘uninsured or underinsured motorist coverage.’ ”
404 So.2d at 949.
In rejecting A.I.U.’s contention that the insured’s oral request, made in January, 1975, to have only $5,000.00 UM coverage rather than UM coverage equal to the liability coverage of $25,000.00 per person, constituted a continuing valid selection of lower than liability UM coverage for reis-suances after the effective date of Act 438 of 1977, which amended La. R.S. 22:1406, the Court, per Marcus, J., observed that Act 438 of 1977 infused into La. R.S. 22:1406 “a requirement that rejection of coverage or selection of lower limits be in writing” and reasoned, further, in part, that:
It is of no moment that the policy in the instant case provided lower limits since the coverage was read into the policy by the terms of the statute [La. R.S. 22:1406, as amended]. Since [the January, 1975 verbal] selection of lower limits conflicted with the coverage written into the [amended] policy law [La. R.S. 2:1406], such selection was required to be in writing.... The oral waiver of [full] uninsured motorist coverage was therefore invalid as being in contravention of La. R.S. 22:628 notwithstanding the fact that the version of La. R.S. 22:1406 in effect at the time [of the oral selection of lower UM limits in January, 1975] did not contain a writing requirement. (Citations omitted). Clearly, prior to ... the effective date of Act 438 of 1977, any selection of lower limits, to be valid, had to be in writing and attached to the policy.
In the instant case, there was never a written selection of lower limits. Thus, Mr. Roberts' oral request for lower limits in January 1975 was ineffective and not applicable to subsequent renewals. Accordingly, plaintiff is entitled to uninsured motorist coverage in an amount not less than the limits of bodily injury liability of $25,000 provided in the policy. 404 So.2d at 951-952. (Brackets, parenthesis and elipsis provided).
In the instant case Terrebonne advertised its “Invitations for Insurance Proposals” in the April 23, 1984 issue of The Houma Daily Courrier, notifying licensed insurance agents that “on Wednesday, April 25, 1984, specifications will be on file” at Terrebonne’s Insurance Office and could be obtained for a nominal fee. The bid packet contained specifications calling for, inter alia, “automobile liability and physical damage” coverage of “$500,000 each occurrence combined single limit for bodily injury and property damage liability” and “Uninsured Motorist for $5,000/$10,000 bodily injury”, detailed instructions to proposers, and proposal forms. ADJUSTCO, INC., as agent for Great Plains, on May 22, 1984, submitted a bid for the automobile liability and physical damage portion of the desired insurance coverage. Terrebonne’s Parish President informed ADJUSTCO, INC., by letter dated June 5, 1984, that “Terrebonne ... accepts the quotations and coverages per your proposal ... dated May 22,1984.” The June 5 letter also stated that: “Your proposal states coverages are p-r(sic) our specifications delivered to you on April 26, 1984. If this is not so; (sic) please advise our Insurance Manager, ... of those items not meeting the specifications.” The letter requested the coverage to be effective June 1, 1984. Before the June 5, 1984 letter was written, the Insurance Manager of Terre-bonne verbally communicated Terrebonne’s acceptance of its bid proposal and requested ADJUSTCO, INC.’s marketing manager to issue a binder “indicating coverages provided to the Parish as of June 1, 1984.” The binder was issued, as requested, and later the policy was delivered. Both the binder and policy reflected $10,000.00 Single Limit Uninsured Motorist coverage was in effect from June 1, 1986.
Giroir argues that the June 5, 1984 letter “at best ... is a conditional acceptance” and not the statutorily required signed document selecting lower than liability limits *43 as UM coverage. He argues that “the significant point is that the written rejection [form] was not submitted to the insured by the insurer, until August 27,1984, and was not signed until September 13, 1984” by Terrebonne’s representative.
Great Plains argues that:
[T]he Bid Specifications, insurance proposals, insurance binder, and Mr. Lyons’ letter of June 5, 1984, when read together, clearly indicate the selection of lower UM limits in writing, and that the letter of Mr. Lyons is a document signed by the insured selecting lower limits of UM coverage ....
... [C]learly in this matter ... the intent of both the insured ... and the insurer ... [was] to provide UM coverage in limits less than the limits of bodily injury liability.
Great Plains also forcefully argues that La. R.S. 22:1406(D)(1)(a) “does not require any ‘special form’ for an effective selection of lower UM coverage” although “both the trial court and the appellee [Giroir] have apparently concluded that there is some particular form which the insured must sign in order to effectively select lower limits of UM coverage” even though the statute “makes no requirement that only a pre-printed rejection form can be used” to reject coverage or select lower limits.
The trial court, in his oral reasons for judgment, dictated at the conclusion of the merits trial, reasoned, in part, as follows:
[Great Plains’] policy exposure is $500,-000 and not the $10,000 they (sic) claim. I don’t think that the jurisprudence as it relates to the issue of the total amount of coverage is abundantly clear. The jurisprudence in my opinion indicates a very restrictive view as to the election not to have uninsured motorist coverage.... The records indicate that [Great Plains] did offer the $10,000 coverage that [Great Plains] felt was applicable to the policy in accordance with what [Great Plains] claim was the intent of ... [Terrebonne]. And although I may agree that the intent of [Terre-bonne] was for $10,000 in coverage or somewhere between five and 10, ...
[Great Plains has] not complied with the applicable statute and jurisprudence. (Emphasis and brackets are ours.)
Nowhere in the trial court’s reasons for judgment is there an outright declaration that only by signing a rejection/lower selection form or slip furnished by the insurer will the insured be considered as having rejected UM or selected lower than statutorily mandated UM limits. However, the trial court implied that anything less will be an ineffective rejection or selection of lower UM limits.
We disagree with the trial court’s holding that Terrebonne had not selected UM limits of $10,000.00 before Giroir’s accident occurred on June 6,1986. We hold that the advertisement for bids, the specifications and instructions, the bid proposal, and Ter-rebonne’s written acceptance of ADJU-STCO, INC.’s bid proposal, when read together constitute an effective selection of $10,000.00 UM limits. Accordingly, the March 3,1986 Summary Judgment, holding Plains’ policy provided $500,000.00 UM is reversed. Plaintiff is entitled to $10,-000.00, plus legal interest thereon from July 3, 1985, based on Great Plains’ UM limits.
EMPLOYER’S RIGHT OF SUBROGATION FOR WORKER’S COMPENSATION BENEFITS PAID
La. R.S. 23:1103 straightforwardly mandates that “the claim of the employer for the [worker’s] compensation [benefits] actually paid shall take precedence over that of the injured employee ... and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his [the employer’s] favor.”
A self-insured employer or his worker’s compensation insurer can recover amounts paid to or for the benefit of an employee out of UM coverage, subject to the limitation that neither the employer or worker’s compensation insurer can recover “out of uninsured motorist coverage paid for by an employee because the worker *44 compensation statute prohibits direct or indirect imposition of the cost of compensation upon an employee.” Johnson v. Fireman’s Fund Ins. Co., 425 So.2d 224, 225 (La.1982), citing La. R.S. 23:1163.
In the instant case Terrebonne has already paid Giroir an amount far in excess of the total insurance coverage, both liability and UM coverage, available to satisfy Giroir’s entitlement to damages. Theriot’s liability insurance limits were $10,000.00 and Giroir’s own UM coverage provided limits of $10,000.00. We have held the Great Plains policy, insuring Terrebonne, provided for only $10,000.00 UM coverage. Dairyland, as Theriot’s liability insurer and as Giroir’s UM insurer, has already deposited into the Registry of the Court the limits of both policies. Terrebonne, the employer-intervenor in these proceedings, was awarded the sum of $89,225.17 in the March 17, 1986 judgment, representing $73,532.77 medical expenses paid on behalf of Giroir through March 11, 1986 and compensation of $15,692.40 paid to Giroir through March 11, 1986. The insurance coverage available to reimburse intervenor, a self-insured for worker’s compensation purposes, for its “compensation outlay” (425 So.2d at 227) consists of Dairyland’s liability insurance policy insuring the tort-feasor and Great Plains’ UM policy insuring Terrebonne, the intervenor, and its employees as omnibus insureds. The total of both policies is $20,000.00. Intervenor is awarded the policy limits of both the Great Plains UM policy and Dairyland’s liability policy as partial reimbursement of its “compensation outlay.” Johnson, supra; Derouselle v. Konecny, 468 So.2d 1382 (La. App. 1st Cir.1985). See also, Moody v. Arabie, 498 So.2d 1081, 1087 (La.1986).
We realize that the “bottom line” result reached in the instant case seems harsh, and perhaps inhumane. However, we view La. R.S. 22:1406 and La. R.S. 23:1103 as requiring the decision we have reached. The Louisiana Legislature is the proper forum to neutralize the seemingly harsh result for future cases in which the insurance coverage (liability and UM) is less than the amount of worker’s compensation benefits paid to or for the employee-tort victim in a suit against a third-party tort-feasor and any available UM insurers.
DECREE
The March 3, 1986 judgment of the trial court is reversed, and judgment is rendered in favor of Great Plains Insurance Company, declaring UM coverage of $10,000.00 was provided by the Great Plains Insurance Company. The March 17, 1986 judgment of the trial court is amended by reducing the liability of Great Plains Insurance Company to plaintiff to the UM policy limits of $10,000.00, plus legal interest from July 3, 1985 until paid; Terrebonne Parish Consolidated Government, inter-venor, is subrogated to the UM coverage provided by Great Plains Insurance Company’s UM coverage, plus legal interest from July 3, 1985 until paid. Judgment is rendered in favor of intervenor, decreeing it subrogated to the $10,000.00 policy limits of Dairyland Insurance Company’s policy insuring defendant Theriot, plus legal interest from date of judicial demand until the date of deposit in the registry of the court. It is further decreed that Keith A. Giroir is entitled to the limits of the UM coverage provided by his policy issued by Dairyland Insurance Company, plus legal interest from July 3, 1985 until the date of deposit in the registry of the court. The March 17, 1986 judgment is affirmed insofar as it taxed expert witnesses’ fees, copy costs, and other court costs and cast Great Plains Insurance Company and Dairyland Insurance Company in the proportions of 75% and 25%, respectively. Keith A. Giroir and Great Plains Insurance Company are each assessed fifty percent of the costs of this appeal. La. C.C.P. art. 2164.
REVERSED IN PART, AMENDED, AND, AS AMENDED, AFFIRMED.