510 So.2d 1305 (1987)
Louise E. MANSOUR, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Warren Randall, Defendants-Appellants.
No. 86-655.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
*1306 Baggett, McCall and Baggett, Robert C. McCall, Lake Charles, for plaintiff-appellee.
Stockwell and Associates, Robert S. Dampf, and Thomas Henning, Lake Charles, for defendant-appellee.
Carol Hunter, Bertrand and Soileau, Ronald J. Bertrand, Rayne, William M. Nolen of Jones, Tete, Nolen, Hanchey, Swift & Spears, Lake Charles, for defendant-appellant.
Before GUIDRY, STOKER and DOUCET, JJ.
DOUCET, Judge.
Plaintiff, Louise E. Mansour, instituted this suit for damages as a result of injuries sustained when she fell out of a sofa-bed while traveling in a motorhome on a public roadway. Named as defendants were Warren Randall, the owner and operator of the motorhome, and his insurer, State Farm Mutual Automobile Insurance Company (State Farm). The City of Lake Charles (City) was later made a defendant. Third-party demands were filed by Mr. Randall and State Farm against the City and the State of Louisiana, through the Department of Transportation and Development (DOTD). The City filed third-party demands against Mr. Randall, State Farm, and the DOTD.
Mrs. Mansour's suit was consolidated for trial with a suit filed by her husband and children for loss of consortium, service, and society, Philip Mansour, et al, v. State Farm Mutual Automobile Insurance Company, et al, Number 84-3060 on the trial docket. These two suits are the subjects of separate appeals. The relevant facts are common to both and our opinion here is equally applicable to the separate opinion rendered this day in Philip Mansour, et al, supra.
Prior to trial of these consolidated matters, the plaintiffs in both suits, Warren E. Randall, State Farm Mutual Automobile Insurance Company and the City of Lake Charles entered into a stipulation which fixed the damages suffered by all plaintiffs; waived legal interest which had accrued prior to date of the stipulation; withdrew all claims of contributory negligence or victim fault on the part of plaintiffs; admitted that the stipulated damages were caused either by negligence on the part of Warren Randall or defect in the roadway; and, that a judicial determination rejecting both negligence of Randall and defect in the roadway as a causative factor would have the effect of a finding of joint and equal fault on the part of Randall and the City. The DOTD was not a party to this stipulation and is not bound thereby.
Following trial on the merits, the district court found that the City and DOTD had concurrent custody and control of the roadway upon which the motorhome was traveling at the time of the accident. The court further found that dips in the roadway presented an unreasonable risk of harm which condition was a cause of Mrs. Mansour's injuries and that the City and DOTD were strictly liable under La.C.C. art. 2317. The trial court also found Mr. Randall negligent in causing the accident. Judgment on the main demands was entered in the amount of $150,000 against Mr. Randall, State Farm, and the City. Judgment on the third-party demands of Mr. Randall, State Farm, and the City was entered in their favor and against DOTD in the amount of $45,000. On appeal, the City and the DOTD dispute the finding by the trial court that the condition of the roadway presented an unreasonable risk of harm. State Farm and Warren Randall dispute the trial court's finding of negligence on the part of Mr. Randall.

FACTS
The accident in question occurred on June 26, 1983. Mrs. Mansour had traveled from Monroe to Lake Charles along with *1307 seven other persons to attend a religious lecture. They were traveling in a 33-foot motorhome owned and being operated by defendant Warren Randall. Following the lecture the group ate a small snack in the vehicle before departing. Prior to leaving, Mrs. Mansour indicated that she felt fatigued and went to the rear of the motorhome where she laid down on a sofa-bed. None of the other passengers actually observed her lying down as their view was blocked. Before getting underway, Mr. and/or Mrs. Randall cautioned everyone, as they had done periodically throughout the trip, to remain seated and particularly, to refrain from standing up or walking about while the vehicle was in motion.
Mr. Randall was driving, a Mr. Cain was seated in the front passenger seat, two persons were seated across from each other at a small table behind Mr. Cain, and the other three passengers were seated on a sofa behind Mr. Randall facing the small table. It was still daylight, about 6:00 p.m., as the group proceeded on Ryan Street to Belden Street where Mr. Randall made a left turn. Belden Street runs parallel to I-10 and crosses Bilbo Street some 400 feet past Ryan Street. Shortly past Bilbo Street there is an I-10 east on-ramp where Mr. Randall planned to enter onto the interstate. A traffic signal light controls the intersection of Belden and Bilbo Streets. At the time of the accident, Bilbo Street had a raised center and sloped down on both sides to facilitate the surface drainage of rainwater. This design created dips where Belden Street intersected with Bilbo Street. The posted speed limit on Belden Street was 35 m.p.h.
Mr. Randall testified that he was driving about 10 to 15 m.p.h. as he approached Bilbo Street but slowed down to 4 to 8 m.p.h. because the traffic signal was red. He did not come to a complete stop, however, as the light turned to green and he proceeded to go across Bilbo Street. At the intersection he noticed the dip, lightly applied his brakes, and claims that he uttered a warning that they were hitting a dip. As the motorhome passed over the dips the rear of the vehicle bounced, causing Mrs. Mansour to tumble off of the sofa-bed and fall to the floor injuring herself. Several of the passengers saw her either in mid-air or immediately upon landing on the floor. The sofa-bed was approximately three feet higher than the floor of the vehicle. She suffered several injuries, including a fractured shoulder, fractured rib, and lumbar and cervical strains. She was diagnosed to have a 15% partial permanent disability and will require physical therapy for years to come. The accident was never reported, and the City only became aware of it when Mrs. Mansour filed this suit. None of the seven other passengers, who were seated, received any injuries.

LIABILITY OF THE DOTD AND THE CITY
The Louisiana Supreme Court has interpreted La.C.C. art. 2317 to provide for the recovery of damages from the custodian of a thing causing injury under a theory of strict liability. For a plaintiff to recover, it must be shown in part that the condition of the thing created an unreasonable risk of harm. Loescher v. Parr, 324 So.2d 441 (La.1975). A public body can be held strictly liable for things in its custody. Jones v. City of Baton RougeParish of East Baton Rouge, 388 So.2d 737 (La.1980).[1]
The trial court found that the intersection posed an unreasonable risk of harm. It is asserted by the City and the DOTD that the trial court erred in reaching this finding. This is a finding of fact which may not be disturbed on review unless we find there was no reasonable factual basis for the finding or that it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*1308 Not every minor imperfection or irregularity in a roadway can be said to create an unreasonable risk of harm for purposes of imposing strict liability. See Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Burris v. Insured Lloyds, 417 So.2d 511 (La.App. 3rd Cir.1982). A roadway does not present an unreasonable risk of harm if it is constructed and maintained in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. United States Fidelity and Guaranty Company v. State, Department of Highways, 339 So.2d 780 (La.1976). Proof that a thing presents an unreasonable risk of harm is not achieved by the mere showing that an accident or injury occurred. Broussard v. Pennsylvania Millers Mutual Ins. Co., 406 So.2d 574 (La.1981).
Our analysis of this issue begins, and in this case ends, by determining whether or not Mrs. Mansour can be considered to have been exercising ordinary care and reasonable prudence. Although Mrs. Mansour testified that Mr. Randall informed her she could lie down, he denies making any such statement and claims that he personally was not aware that she was lying down. There is no evidence that any of the other passengers heard Mr. Randall make this statement and we find that in all probability it was not made.
Mrs. Mansour, who at 5'7" tall and weighing 187 lbs. was moderately overweight, chose to lay on a narrow bed, some two and one-half to three feet wide, standing approximately three feet off of the floor. Assuming such a position while the vehicle was traveling on a public roadway was, we feel, not exercising ordinary care and reasonable prudence. We firmly believe that a person exercising ordinary care and reasonable prudence would have remained seated while the vehicle was in motion. Lying down, the precariously perched plaintiff was subject to being rolled or jarred off of the narrow bed by foreseeable motion in the vehicle caused by ordinary traffic and road conditions which would not have affected a passenger in a seated position. This conclusion has a basis in fact as none of the seven other passengers were affected in the least when the motorhome passed over the dips in the roadway. We note that coffee being consumed by at least one passenger was not even spilled as a result of the motion of the vehicle. These other passengers were exercising ordinary care and reasonable prudence. Clearly the roadway was constructed and maintained by defendant(s) so as not to present an unreasonable risk of harm to them. We find that the trial court was clearly wrong in holding that the condition of the roadway presented an unreasonable risk of harm for purposes of imposing liability on the DOTD and the City.
It is argued that the removal of a stop sign at Bilbo Street for traffic on Belden Street and the installation of a traffic signal light contributed to the creation of an unreasonable risk of harm. It is further argued that a sign should have been placed on Belden Street to warn of the dips ahead. As previously mentioned, the motorhome was proceeding at an extremely slow rate of speed at the time it passed over the dips. Had the vehicle come to a full stop before moving forward it is probable that it would have been traveling at even a slower rate of speed although we don't feel the vehicle would have appreciably slowed down had a warning sign been present. However, neither of these factors affect our finding that the roadway was constructed and maintained in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. The "condition" of the roadway as we have considered it encompasses the dips, the traffic signal light instead of a stop sign, and the existing traffic signs or lack thereof.
We find it unnecessary to address the testimony of either of the two experts in this case who testified regarding the risk of harm posed by the conditions of the roadway. Neither addressed the reasonableness of plaintiff's conduct which we found to be a determinative factor. Our *1309 finding that the condition of the roadway did not present an unreasonable risk of harm necessarily precludes a finding of liability based upon either a theory of strict liability under La.C.C. art. 2317 or negligence under La.C.C. art. 2315.

NEGLIGENCE OF MR. RANDALL
The trial court found that the negligence of Mr. Randall in operating the motorhome was a cause-in-fact of Mrs. Mansour's injuries. No reasons for this finding were given by the trial court but apparently it was based on Mr. Randall's failure to proceed at a proper speed under the circumstances. The trial court found that Mr. Randall was driving at a speed greater than the 4 to 8 m.p.h. he claimed. The reason for this finding was the opinion of the trial judge that at a speed of 4 to 8 m.p.h. the effect of passing over the dip would not have caused the motorhome to pitch so much that Mrs. Mansour would have been tossed out of the sofa-bed. A duty is imposed on the driver of a motor vehicle by La.R.S. 32:64(A) not to drive a vehicle at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for, among other things, the surface of the roadway. See also Beauregard v. Salmon, 205 So.2d 634 (La.App. 2nd Cir.1967). This duty is owed to other motorists, pedestrians, and to passengers in the driver's vehicle.
By all indications, Mr. Randall was driving at a snail's pace when he passed over the dips. The evidence shows that the motorhome was traveling, at the most, 15 m.p.h. and, in all probability, slower than that. There is nothing in the record to support a finding to the contrary. Mr. Randall estimated that he was driving from 4 to 8 m.p.h. when he encountered the dips. Other passengers estimated the rate of speed within varying ranges, the outer limit of none of them exceeding 15 m.p.h. The statutory duty imposed on Mr. Randall was intended to protect a passenger exercising ordinary care and reasonable prudence. We have already determined that the plaintiff was not such a passenger. We feel that Mr. Randall met his duty as set forth by La.R.S. 32:64(A) and the jurisprudence. That duty did not extend to protect a plaintiff such as Mrs. Mansour from this type of harm arising in this manner. The finding by the trial court that Mr. Randall violated a duty owed Mrs. Mansour and was therefore negligent was clearly wrong.
For the reasons assigned, the judgment of the trial court is reversed in part, amended in part, and recast to read as follows:
IT IS ORDERED, ADJUDGED, and DECREED that, pursuant to the stipulation entered into by all parties to these suits, excepting the State of Louisiana, Through the Department of Transportation and Development, there is judgment in favor of plaintiffs, LOUISE MANSOUR, PHILIP MANSOUR, SR., PHILIP MANSOUR, JR., DR. PHYLLIS MANSOUR CREWS, DR. SAMUEL P. MANSOUR, MARGARET MANSOUR, JOE MANSOUR, JIMMY MANSOUR, TERESA MANSOUR, JOHNNY MANSOUR, MARK MANSOUR and SAMERA MANSOUR, and against THE CITY OF LAKE CHARLES, WARREN RANDALL and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, in solido, in the full sum of ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS, together with legal interest from August 2, 1985 together with all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be and hereby is judgment in favor of the STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT dismissing with prejudice the third party demands filed against it by WARREN E. RANDALL, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and THE CITY OF LAKE CHARLES.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, pursuant *1310 to the stipulation of the parties, all costs of these proceedings, both at the trial level and on appeal, are assessed 50% to WARREN E. RANDALL and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and 50% to THE CITY OF LAKE CHARLES.
REVERSED IN PART, AMENDED IN PART, AND RECAST.
NOTES
[1] Except with regard to buildings, Jones has been effectively overruled by La.R.S. 9:2800, Added by Acts 1985, No. 454 § 1, eff. July 12, 1985. Since the accident in question occurred in 1983 however, Jones fully applies to the facts of this case.