513 So.2d 1166 (1987)
Keith A. GIROIR
v.
Teri A. THERIOT, Dairyland Insurance Company and Great Plains Insurance Company.
Keith A. GIROIR and Terrebonne Parish Consolidated Government
v.
Teri A. THERIOT, Dairyland Insurance Company and Great Plains Insurance Company.
Nos. 87-C-0614, 87-C-0681.
Supreme Court of Louisiana.
October 19, 1987.
Rehearing Denied November 19, 1987.
Joseph Waitz, Huntington B. Downer, Waitz & Downer, Houma, for applicant.
Laddie Freeman, William Watkins, Jerry Hermann, Houma, Watkins, Walker & Hermann, George Legrand, Hebert, Mouledoux & Bland, Thomas Smith, New Orleans, for respondents.
MARCUS, Justice.
Keith A. Giroir filed suit against Teri A. Theriot and her insurer, Dairyland Insurance Company (Dairyland), seeking damages sustained by him as a result of an accident on June 6, 1984 between a truck driven by Ms. Theriot and a truck driven by him and owned by his employer, Terrebonne Consolidated Government (Terrebonne). Plaintiff added his uninsured/underinsured motorist (UM) carrier, also Dairyland, and his employer's UM carrier, Great Plains Insurance Company (Great Plains), as defendants by a supplemental and amending petition. Terrebonne intervened seeking reimbursement of worker's compensation and medical benefits it paid to plaintiff as a result of the accident.
Plaintiff filed a motion for summary judgment alleging that Great Plains provided UM coverage up to the policy's $500,000 limits of bodily injury coverage because Terrebonne had not signed a written rejection of UM coverage prior to the date of *1167 the accident. Great Plains also filed a motion for summary judgment asserting that Terrebonne had effectively selected lower UM coverage of $10,000 prior to the accident. After a hearing, the trial judge, finding no rejection of UM coverage until after the accident,[1] concluded that coverage was in the amount of $500,000. Accordingly, he granted a summary judgment in favor of plaintiff and denied Great Plains' motion for summary judgment.
After trial on the merits, the judge rendered judgment in favor of plaintiff and against defendants in solido in the amount of $646,439.95. Finding plaintiff 10% negligent, he reduced the judgment to $581,795.96. Dairyland's liability, as liability insurer for Ms. Theriot, was limited to $10,000. Dairyland's liability, as UM carrier for plaintiff, also was limited to $10,000. Great Plains' liability, as UM carrier for Terrebonne, was limited to $500,000. Judgment further was rendered in favor of intervenor, Terrebonne, in the amount of $89,225.17 representing medical payments of $73,532.77 and compensation payments of $15,692.40.
Great Plains devolutively appealed from the summary judgment and suspensively appealed from the judgment on the merits. The court of appeal reversed the summary judgment and held that Terrebonne had effectively selected the lower UM limits of $10,000. It also amended the judgment on the merits by awarding intervenor, in partial reimbursement of its "compensation outlay," the limits of the Great Plains UM policy ($10,000) and the Dairyland liability policy ($10,000) covering Ms. Theriot. The court of appeal further decreed that plaintiff was entitled to the limits of UM coverage provided by his Dairyland policy ($10,000).[2] Plaintiff and Terrebonne filed separate applications to this court. We granted certiorari on each application to determine the correctness of that decision.[3]
The primary issue presented for our review is whether Terrebonne selected in writing the lower limits of UM coverage under the Great Plains policy.
Under Louisiana law, UM coverage is provided by La.R.S. 22:1406 and embodies a strong public policy. The statute's purpose is to provide recovery of damages for automobile accident victims when the tortfeasor is without insurance or is inadequately insured. The requirement of UM coverage under La.R.S. 22:1406 is an implied amendment of every automobile liability policy delivered or issued for delivery in this state and will be read into the policy unless validly rejected. In this regard, the right of the insured to select lower limits[4] and the corresponding formalities have been the subject of several amendments to the statute.
In 1974, the legislature amended and reenacted La.R.S. 22:1406(D)(1)[5] to require UM coverage "in not less than the limits of bodily injury liability provided by the policy." This coverage was not required "where any insured named in the policy shall reject the coverage or select lower limits." The statute did not specify the method by which UM coverage was to be rejected or lower limits selected.
To fill this void, we looked to general principles of insurance law. La.R.S. 22:628 provided that no agreement modifying coverage of an insurance contract was valid unless it was "in writing and physically made a part of the policy or other written evidence of insurance." Accordingly, we found that in the absence of a more specific rule in La.R.S. 22:1406, a rejection of UM coverage or selection of lower UM limits was required to be in writing and attached to the policy pursuant to La.R.S. 22:628. A.I.U. Insurance Co. v. Roberts, 404 So.2d 948 (La.1981).
*1168 Act 438 of 1977,[6] provided a more specific rule concerning the formalities of rejection or selection of lower UM limits. According to this amendment, UM coverage is required unless "any insured named in the policy shall reject in writing the coverage or selects lower limits." Moreover, the act provides that "[a]ny document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."[7]
In the instant case, the court of appeal held that four documents, when read together, constituted an effective selection of the lower $10,000 UM limits under La.R.S. 22:1406(D)(1)(a). Plaintiff and intervenor allege, however, that no single document meets the requirements of the statute. In addition, they argue that even if these documents were read together, they would not constitute an effective selection of lower UM limits.
In order to effect a valid selection of lower UM limits, the selection must be in writing and signed by the named insured or his legal representative. A document evidencing a selection of lower limits must be clear and unambiguous. Moreover, the statute imposes UM coverage "notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment." Roger v. Estate of Tad Moulton, 513 So.2d 1126 (La.1987), rehearing granted on other grounds, (La. June 24, 1987).[8]
*1169 The first document at issue is an advertisement by Terrebonne in the April 23, 1984 issue of The Houma Daily Courier. Pursuant to public bidding law, the advertisement invited licensed insurance agents to submit insurance proposals. It also notified interested agents that specifications would be on file on Wednesday, April 25, 1984 and could be obtained at Terrebonne's insurance office. This document makes no reference to UM coverage. The second document is the instructions and specifications to which the advertisement refers. The section of the specifications entitled "Automobile Liability and Physical Damage" in part specifies coverage of "$500,000 each occurrence combined single limit for bodily injury and property damage liability" and "Uninsured Motorist for $5000/10,000 bodily injury." This document is not signed by the named insured or its legal representative. The third document is the May 22, 1984 bid proposal of ADJUSTCO, INC., the agent for Great Plains. It includes proposals for three categories of insurance: worker's compensation, comprehensive general liability, and automobile liability and physical damage. The automobile liability section does not mention UM coverage or the selection of lower limits. Nor does it refer to Terrebonne's specifications concerning automobile liability. By contrast, both the worker's compensation and the comprehensive general liability sections conclude with the following provision: "[a]ll coverages per Bid Specifications." The final document at issue is Terrebonne's June 5, 1984 written acceptance of ADJUSTCO, INC.'s proposal. The letter states in part:
This is to advise that the Terrebonne Parish Consolidated Government accepts the quotations and coverages per your proposal submitted on Parish Government Risk Management Agency letterhead dated May 22, 1984.
Your proposal states coverages are p-r [sic] our specifications delivered to you on April 26, 1984. If this is not so; please advise our Insurance Manager, Mr. Earl C. Fischer of those items not meeting the specifications.
The letter further requested that the coverages become effective on June 1, 1984. Although the letter is in writing and is signed by the parish president, it nowhere mentions UM coverage or the selection of lower limits. The letter's reference in the first paragraph to ADJUSTCO, INC.'s proposal does not cure this omission. The proposal neither mentions UM coverage nor states that the proposed automobile liability coverage was in accordance with Terrebonne's specifications. For the same reasons, the statement in the second paragraph that ADJUSTCO, INC.'s proposal was in accordance with Terrebonne's specifications is incorrect. Finally, the request that Terrebonne's insurance manager be informed of any items not meeting the specifications renders the coverage uncertain.
Whether the documents are read individually or together, they do not constitute an effective selection of lower UM limits under La.R.S. 22:1406(D)(1)(a).[9] Notwithstanding Terrebonne's intentions, no single document is both signed by the named insured or its legal representative and clearly selects lower UM limits. Terrebonne's signed acceptance letter, even when read together with the documents to which it refers, falls far short of a clear, unmistakable selection of the lower $10,000 UM limits. Accordingly, plaintiff is entitled to UM coverage in the amount of $500,000, the limits of bodily injury coverage provided by the Great Plains policy.[10]
*1170 In view of our holding that plaintiff is entitled to UM coverage in the amount of $500,000, the judgment of the court of appeal will have to be reversed insofar as it held otherwise. This will require that the judgment be amended to reflect the different amounts due and owing to the parties. Since we do not know the amount of compensation and medical benefits paid by Terrebonne since rendition of the judgment in the district court, we consider it more appropriate to remand the case to that court to recast the judgment in accordance with law and the views expressed herein.[11]

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it limits Great Plains Insurance Company's liability to $10,000 and assesses fifty percent of the costs of appeal to Keith A. Giroir. The case is remanded to the district court to recast the judgment. Otherwise, the judgment is affirmed. All costs of appeal are assessed against Great Plains Insurance Company.
NOTES
[1] Terrebonne's finance director signed an "uninsured motorist coverage rejection form" on September 13, 1984 selecting lower UM limits of $10,000. The accident occurred on June 6, 1984.
[2] 503 So.2d 39 (La.App. 1st Cir.1986).
[3] 508 So.2d 95 (La.1987).
[4] The reasoning applicable to the selection of lower limits in this opinion also includes a rejection of UM coverage.
[5] Act 154 of 1974, effective July 31, 1974.
[6] Act 438 of 1977, effective September 9, 1977, amended and reenacted La.R.S. 22:1406(D)(1)(a) to read as follows:

D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
[7] The most recent amendment to the statute was Act 436 of 1987, effective September 1, 1987. It changes the requirements for the rejection of UM coverage or selection of lower UM limits as follows:

After the effective date of this Act, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
. . . .
Section 2.
The legislature expressly declares its intent that legally enforceable rejection of uninsured motorist coverage or selection of lower limits shall be made only on the standard form provided for in this Act. Other writings, letters, communications, or miscellaneous documents shall not be deemed evidence of the intent of any insured in this matter.
Our determination of this case is controlled by the language of the statute in effect at the time of the alleged selection of lower limits. The documents at issue were all dated 1984, before the 1987 amendment of the statute. Accordingly, the 1977 version of La.R.S. 22:1406(D)(1)(a) is controlling.
[8] In Roger, we did not consider the worker's compensation insurer's claim for reimbursement because it had not applied for certiorari from the court of appeal's judgment. On this sole issue, we granted the insurer's application for rehearing.
[9] Having reached this conclusion, we need not address plaintiff's and intervenor's alternative argument that Roger requires a rejection of UM coverage or a selection of lower limits to be expressly set forth in a single document.
[10] Plaintiff also contends that the claim of intervenor Terrebonne should be reduced by the amount of plaintiff's negligence, which the trial court held to be 10%. Plaintiff, however, did not preserve this issue for appellate review. The trial judge rendered judgment in favor of Terrebonne in the full amount of the compensation paid ($87,225.17) without reduction for the percentage of plaintiff's negligence. This portion of the judgment was adverse to plaintiff. However, plaintiff did not appeal or answer Terrebonne's appeal. Nor did plaintiff address this issue in his answer to Great Plains' appeal. Accordingly, this issue is not properly before us.
[11] Intervenor's claims that it is entitled "to be paid in preference and priority out of any award" to plaintiff, to "reimbursement of all Worker's Compensation Benefits paid post-judgment, but prior to the finality of this appeal," and to "legal interest on all sums paid to plaintiff would be better addressed at that time.