784 So.2d 740 (2001)
Charles R. STEWART, et ux., Plaintiffs-Appellants,
v.
Michael L. EDWARDS, et al., Defendant-Appellee.
No. 34,435-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
*741 Francis M. Gowen, Jr., Shreveport, Counsel for Appellants Evelyn B. Stewart, Evelyn Alice Stewart, Stephanie Ann *742 Stewart Savage, Charles Russell Stewart, III, Christian Webb Stewart.
Mayer, Smith & Roberts by John Curtis Turnage, Wilkinson, Carmody & Gilliam by Bobby S. Gilliam, Shreveport, Counsel for Appellant American States Ins. Co.
Lunn, Irion, Johnson, Carlisle & Gardner by Ronald E. Raney, Penny N. Nowell, Shreveport, Counsel for Appellee, The Home Indemnity Company.
Before BROWN, CARAWAY and KOSTELKA, JJ.
KOSTELKA, J.
The wife and children of the now-deceased Charles Stewart and American States Insurance Company (collectively, the "Appellants") appeal the February 6, 1997 judgment of the First Judicial District Court in favor of The Home Indemnity Company ("Home Indemnity")[1]. Finding that the judgment of the trial court was proper as a matter of law, we affirm.

FACTS
While driving a company vehicle within the course and scope of his employment, Charles Stewart ("Stewart") was injured in a two-car accident on August 10, 1987. It was stipulated that the driver of the other vehicle, Michael Edwards ("Edwards"), was solely at fault and uninsured.[2] Stewart was employed by Liggett Group, Inc. ("Liggett"). The vehicle Stewart was driving had been leased by Liggett from Gelco Corporation ("Gelco"), a national leasing corporation.
Home Indemnity had issued insurance policies to both Gelco and Liggett, using the same Uninsured Motorist ("UM") insurance rejection/selection form. The policy issued to Gelco had bodily injury liability limits of $2,000,000; the policy issued to Liggett had bodily injury liability limits of $1,000,000. Gelco rejected UM coverage, while Liggett selected lower limits of $20,000. Stewart's personal automobile liability carrier, American States Insurance Company ("American States"), provided $100,000 UM coverage. At issue at the trial court level was the validity of the UM insurance forms executed in connection with the policies issued by Home Indemnity to Liggett and Gelco.
A trial limited to the issue of UM insurance coverage was conducted by stipulation of facts on October 9, 1996. The trial court rendered judgment on February 6, 1997, holding that both the rejection of UM coverage in Gelco's policy and the selection of lower limits by Liggett were valid.[3] Specifically, the trial court determined that "each of the uninsured motorist rejection/selection forms are valid on their face, based upon the requirements of LRS *743 22:1406, as enacted on the effective dates of these elections, and based upon the applicable jurisprudence." After Stewart passed away in 1998 due to causes unrelated to the accident, his wife and children were substituted as party plaintiffs. They and American States have appealed.

DISCUSSION
The Appellants raise several assignments of error wherein they dispute the validity of Home Indemnity's UM rejection/selection form.
Initially, we note, as did the trial court, that the burden is placed on the insurer to prove that the named insured rejected in writing UM coverage equal to the liability coverage limits or selected lower limits. See, Tugwell v. State Farm Ins. Co., 609 So.2d 195, 196-197 (La.1992). We conclude that the burden of proof in this case was met by Home Indemnity.
We recognize that UM insurance coverage is statutorily required and embodies a strong public policy. La. R.S. 22:1406. The law in effect at the time the elections were made by Gelco and Liggett, prior to September 1987, required an unequivocal, written expression of rejection or selection of lower limits of UM coverage.[4]Roger v. Estate of Moulton, 513 So.2d 1126, 1131 (La.1987); Giroir v. Theriot, 513 So.2d 1166, 1168 (La.1987). At that time, an insured had to be informed of the law and three options before a rejection or selection of lower UM limits would be valid. The form presented by the insurer was required to give the insured "the opportunity to make a `meaningful selection'" from the statutory options which include: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage. Tugwell, supra. The Tugwell court noted that an applicant must be made aware of the options he had as provided by the statute, and stated:
An insured cannot exercise an option he does not know exists. This can be accomplished in several ways. For example, the insurer can require the insured to acknowledge in writing he has been informed of the options; or, the application itself can be set up in such a way through the use of blanks and boxes that it is apparent to the reasonable person that he has the option of selecting any lower limit he chooses. (Emphasis added.)
Id. at 199. Clearly, Tugwell, supra does not mandate a required format that must be adhered to by an insurer to effect compliance with the statute. Instead, a UM rejection form must simply give the applicant "the opportunity to make a `meaningful selection'" among the options required by statute.
In Daigle v. Authement, 96-1662 (La.04/08/97), 691 So.2d 1213, a UM insurance rejection form was called into question, which the court ultimately determined was valid. In so doing, the Daigle court noted that:
Implicit in the legislature's direction to insurers to design a form, was the responsibility to design a form that would fairly effectuate the intent of the law. The legislature did not mandate that the form be designed in any particular way, nor did it indicate that any particular language was sacrosanct. The legislature had to have anticipated that various insurers might go about the design of the necessary form in different ways. *744 Moreover, as in any case where the same type of document is drafted separately by multiple authors, it is to be expected that some forms will be better than others. Had the legislature believed that only one format was acceptable or that only certain words or phrases could be used, it would have included the required format in the statute....
Id. at 1214-15.[5]
In the case sub judice, the form used by Home Indemnity for both Gelco and Liggett stated as follows:
REJECTION OF UNINSURED MOTORISTS COVERAGE OR SELECTION OF LIMIT OF LIABILITY
(Louisiana)
The Louisiana Insurance Code (Section R.S. 22:1406), amended, permits you, the insured named in the policy, to reject the Uninsured Motorists Coverage or to select a limit of liability higher or lower than the limit of Bodily Injury Coverage in the policy but not less than the basic financial responsibility limit. Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from the owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.
In accordance with the Louisiana Insurance Code (Section R.S. 22:1406), amended, the undersigned insured (and each of them)
(Applicable item marked [×])
[] agrees that the Uninsured Motorists Coverage afforded in the policy is hereby deleted.
[] agrees that the following limit of liability applies with respect to the Uninsured Motorists Coverage afforded in the policy:
$ each person (enter limit if
applicable);
$ each accident.
___________
SIGNATURE OF INSURED
(Emphasis added.)
Gelco's representative marked the first box, rejecting UM coverage, and signed the form, while Liggett's representative marked the second box, wrote in the figure $20,000 as the limits for both "each person" and "each accident," and signed the form.
While we recognize that the Home Indemnity form does not explicitly use the precise language set forth by the statute, the form does, however, adequately provide the required options to the applicant. Moreover, Louisiana courts have repeatedly set forth that no specific format is necessary to effectuate a valid rejectioni.e., there are no "magic words" required to ensure that the applicant has the opportunity of a "meaningful selection." Here, a reasonable applicant reading the UM rejection/selection form draws an understanding of the choices he has available from the form. It is implicit in the form that UM coverage is "afforded in the policy." Further, this form informs the applicant that he may reject coverage or select limits higher (a choice not required by Tugwell, supra or statute) or lower "than the limit of Bodily Injury Coverage in the policy...." Resultantly, we agree with the trial court that the Home Indemnity form set forth adequate information as required by the statute as it existed at the time, and that Gelco and Liggett were provided with *745 the opportunity to make a "meaningful selection" or "informed rejection." See, Harris v. Safeway Ins. Co., 31,050 (La. App.2d Cir.09/23/98), 718 So.2d 619. Therefore, we conclude, as did the trial court, that the Home Indemnity UM insurance rejection/selection form was legally valid on its face.
Moreover, we note that prior to September, 1987, a rejection or selection of lower limits was not required to be made on a form designed or provided by the insurer.[6] At the time Gelco rejected UM coverage, La. R.S. 22:1406(D)(1)(a) allowed for "[a]ny document signed by the named insured or his legal representative ...." to serve as a valid rejection, and such documents were presumed to become part of the policy when issued regardless of whether it was physically attached to the policy. In this case, in addition to the executed UM rejection form wherein Gelco rejected coverage, William Bauler, Gelco's Vice President for Insurance, sent a dated letter to the agent who issued the policy, with the directive that: "It is our desire to reject uninsured motorists coverage in the States where we have the option to reject...."
The Louisiana Supreme Court in Roger, supra, recognized the scenario wherein a separate document (in that case, as in this one, a letter by the insured) might serve to validly reject UM coverage. However, the Roger rejection letter was clearly ambiguous as to the insured's intent regarding UM coverage in Louisiana; whereas, the letter in this case clearly indicates Gelco's intent and desire to reject UM coverage whenever possible.
Appellants further argue that the Home Indemnity UM insurance forms utilized by Gelco and Liggett are invalid because they were not dated. We note that Louisiana courts have upheld UM rejection forms that did not provide a place for the date next to the signature line. See, Daigle, supra; Pine v. Doolittle, 28,141 (La.App.2d Cir.06/26/96), 677 So.2d 686, writ denied, 96-2269 (La.05/30/97), 694 So.2d 240; Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3d Cir.1989), writ denied, 559 So.2d 138 (La.1990). The Home Indemnity forms clearly set forth an effective date on each of the Gelco and Liggett rejection forms and references both forms to the respective insurance policies. There can be no question as to what date the rejection was made effective, both dates prior to Stewart's collision. Whereas, we recognize the pronouncement set forth in Roger, supra at 1132, that "the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer" (emphasis added), we note that at the time the Home Indemnity forms were executed, Roger, supra had not yet been decided. However, as already discussed, the Roger court was addressing the narrow issue of the validity of a letter written by the insured which purported to reject UM coverage on behalf of the insured at some speculative date in the future. In this case, there is no question as to what date the UM insurance election forms were validthe dates were typed obtrusively on each form. The absence of a date line alongside the signature line does not invalidate this form. Further, we note that the parties stipulated as to the approximate dates the Gelco and Liggett forms were executed. This assignment of error is without merit.
*746 Appellants also dispute the trial court's finding that there existed no legal requirement that a corporate signatory's authority to sign a UM rejection/selection form on behalf of the corporation be stated or attached to the form.[7] Appellants argue that there was nothing to indicate that the representative who signed the Gelco form had authority to do so, and without such proof of authority, the rejection form is invalid.
Initially, we note that pursuant to the Stipulations of Fact executed by the parties and made part of the record, the Appellants specifically acknowledged and agreed to the corporate authority of the officials who signed the UM rejection/selection forms on behalf of Gelco and Liggett. The Appellants have offered no further argument or evidence which would prove to invalidate their prior stipulation, and, therefore, considering the stipulations conclusive as to this issue, we determine that this assignment of error has no merit.
However, even ignoring the stipulated facts which squarely address this issue, we agree with the trial court's finding that no legal requirement existed regarding the proof of authority for a representative to sign a UM rejection/selection form. We note that the question of the authenticity of an insured's representative's signature on a rejection form is a material issue of fact. See, Ruiz v. Lewis, 579 So.2d 1203 (La.App. 4th Cir.1991), writ denied, 586 So.2d 562 (La.1991), citing, Joseph v. Foremost Ins. Co., 532 So.2d 909 (La.App. 5th Cir.1988). Moreover, corporate authority may be explicitly or implicitly proved but must be proved by admissible evidence. Ruiz, supra, citing, Thibodeaux v. Burton, 538 So.2d 1001 (La.1989). Here, the record contains an affidavit which serves to substantiate the authenticity of the Gelco representative's signature on the rejection form and his authority as Gelco's vice-president of insurance to execute such a form at the time it was signed. We conclude that there was sufficient proof that the Gelco representative who signed the UM rejection form had the requisite authority, and this assignment is without merit. See also, Tapia v. Ham, 480 So.2d 855, 859 (La. App. 2d Cir.1985) ("[w]hen a corporation is insured and wishes to reject UM coverage, an authorized agent may execute the rejection form.")
Finally, the Appellants argue that Gelco, as lessor, could not validly reject UM coverage on behalf of Liggett, Gelco's lessee, or Stewart, who Appellants argue was also Gelco's lessee, citing cases which purportedly support this position. However, the cases cited by the Appellants are inapplicable to the facts at hand. Moreover, the specific legal issue addressed in those "rental car" cases relied on by Appellants is easily distinguished from the issue and facts of this case. The "rental car" cases all involve a contractual relationship between an automobile rental agency as lessor and an individual as the lessee. The courts have determined that those particular types of lessors cannot reject UM coverage on behalf of those lessees, because those lessors place themselves in the position of liability insurers which in effect "sell" insurance to those lessees. See, Quittem v. National Car Rental Systems, Inc., 582 So.2d 1337 (La.App. 4th Cir. 1991). Those lessees actually become the "named insured," who, under the UM statute, is the party with the ability to accept or reject UM coverage.
*747 Obviously, Gelco and Liggett were the named insureds in their respective policies and, as such, the proper parties to reject or modify UM coverage. In this case, there was no relationship between Gelco or Stewart. Clearly, Stewart was not Gelco's lessee. Gelco was not in a position to offer Stewart the opportunity to purchase or reject UM coverage, and certainly made no contractual assurances to Stewart, as the automobile rental agency lessors did to the lessees in the "rental car" cases.
Although Liggett was Gelco's lessee, Gelco never put itself in the position (as did the lessors in the "rental car" cases) of offering liability insurance to its lessee, Liggett. In fact, pursuant to the Lease Agreement between Gelco and Liggett, Gelco required Liggett to purchase its own liability insurance policy, wherein Gelco was made an additional insured. Although the Appellants argue a correct legal proposition, their argument fails to fit the facts and issues of this case. The legal theory argued by Appellants in this assignment of error is inapplicable to this case and is not a basis for invalidating the waiver of UM coverage by Gelco.

CONCLUSION
For these reasons, we conclude that the judgment of the trial court was correct and is, therefore, affirmed. Costs of this appeal are assessed to the Appellants.
AFFIRMED.
BROWN, J., dissents with written reasons.
BROWN, J., dissenting.
UM coverage is statutorily required and embodies a strong public policy. La. R.S. 22:1406. The object of the statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987).
The law in effect at the time these elections were made, prior to September 1987, required an unequivocal, written expression of rejection or selection of lower limits of UM coverage. Roger, supra at 1131; Giroir v. Theriot, 513 So.2d 1166, 1168 (La.1987).[1] At that time, an insured had to be informed of the law and three options before a rejection or selection of lower UM limits would be valid. The supreme court stated in a case involving a 1983 rejection of UM coverage:
... LA.REV.STAT. § 22:1406(D)(1)(a) required uninsured motorist (UM) coverage `in not less than the limits of bodily injury liability provided by the policy.' However, such UM coverage was not required `where any insured named in the policy [rejected] in writing the coverage or select[ed] lower limits.' The statute did not specify how a rejection or selection of lower limits was to be effected. This court has held a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. Henson v. Safeco Insurance Companies, 585 So.2d 534, 538 (La. 1991); Giroir v. Theriot, 513 So.2d 1166, 1168 (La.1987); A.I.U. Insurance Co. v. Roberts, 404 So.2d 948, 951-52 (La. 1981). Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. *748 Henson, 585 So.2d at 539. In other words, the form used by the insurance company must give the applicant the opportunity to make a `meaningful selection' from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage. (Emphasis added).
Tugwell v. State Farm Insurance Company, 609 So.2d 195, 196-197 (La.1992).
Home Indemnity argues that prior to September 1987, it was not obliged to use a form for the rejection of UM coverage; however, as in Tugwell, it chose to do so.[2] Home Indemnity's form provides boxes for the insured to select only one of two options, i.e., "agrees that the Uninsured Motorist coverage afforded in the policy is hereby deleted" or "agrees that the following limit of liability applies with respect to Uninsured Motorist coverage in the policy." If the second option is selected, the form provides a space to fill in how much UM coverage per person and accident is desired. There was no box to select UM coverage equal to the policy's bodily injury limits, nor does the form inform the insured of automatic entitlement to UM coverage equal to the bodily injury limits in the policy if he does not check either of the two boxes provided.
Home Indemnity contends that its form meets all of the jurisprudential requirements, including UM coverage equal to the bodily injury limits, because it allows the applicant to accept such coverage by the affirmative act of writing in an amount of UM coverage equal to his liability limits. The jurisprudence, however, requires that the insured be apprized that he has that option and that if he does not affirmatively reject UM coverage or select lower limits, he will have by operation of law UM coverage equal to the bodily injury coverage.
Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991), is a case on point. Henson involved a 1982 rejection of UM coverage. The supreme court, in rejecting the same argument now made by Home Indemnity, noted that it is the rejection of UM coverage, and not the acceptance, that must be the affirmative act of the insured. Id. at 539. The form in Henson attempted to set up an automatic rejection of UM coverage by requiring the insured to affirmatively mark an "X" to obtain UM coverage. In the case sub judice, the form requires that the insured affirmatively write in the amount of his policy's bodily injury limits to obtain such coverage.
The form in the instant case implies that the insured must either reject UM coverage outright or select an amount of UM coverage by placing an "X" in the appropriate box and writing in the amount in the space provided. The form is deficient because it requires an affirmative act of the insured to obtain UM coverage equal to the bodily injury liability limits provided in the policy. The form does not explain to the insured his right to full UM coverage by not selecting either of the two options provided, nor does it clearly explain the law regarding UM coverage.
This is in accord with Evans v. Crowe, 98-2422 (La.App. 1st Cir.12/28/99), 765 So.2d 366, writ denied, 00-0264 (03/24/00), 758 So.2d 156; Sutherland v. Babin, 98-923 *749 (La.App. 5th Cir.05/19/99), 735 So.2d 881, writ denied, 99-1796 (La.10/08/99), 750 So.2d 969; Trahan v. Prudential Property & Casualty Insurance Company, 97-2470 (La.App. 1st Cir.05/14/99), 739 So.2d 811, writ denied, 99-2772 (La.12/10/99), 751 So.2d 861. In these opinions, UM coverage rejection forms containing the identical language to that used in the form in the instant case were considered by the respective courts and found to be invalid rejections or selections of lower UM limits for the same reasons we have stated above.
The majority opinion finds that the missing option required by Tugwell is "implicit in the form." Because of the statutorily expressed strong public policy in favor of UM coverage, courts are not allowed to supply by implication what is not there.
For these reasons, I respectfully dissent.
NOTES
[1] This court initially rejected both an application for writs and an appeal filed by appellants on grounds that an interlocutory judgment which does not cause irreparable harm was a non-appealable partial final judgment under La. C.C.P. art.1915 and applicable jurisprudence. After Article 1915 was amended by Acts 1999, No. 89, § 1, and Acts 1999, No. 1263, § 1, all parties petitioned the trial court to revise and designate the previous interlocutory rulings as final judgments pursuant to La. C.C.P. art. 1915(B). This request was granted on April 7, 2000. Thereafter, Appellants filed the instant appeal.
[2] Edwards' vehicle had a 10/20 liability policy issued by Commodore Insurance Company; however, Commodore was declared insolvent and liquidated in Texas with no funds available to pay Stewart's claim.
[3] Another judgment rendered by the trial court February 21, 1997 was also certified a final judgment. That judgment ranked the UM coverages available to Stewart. Additionally, the trial court further ruled on the issue of "stacking" of insurance coverage in its April 6, 2000 judgment; however, neither of those judgments is before us on appeal.
[4] Any reference herein to Louisiana's UM coverage statute, La. R.S. 22:1406, is as that statute existed at the time the subject UM insurance rejection/selection forms were executed in 1986.
[5] The legislature did precisely that in a 1997 amendment to the UM insurance statute, when it finally mandated a required form to be used by insurers for UM coverage.
[6] Effective September 1, 1987, the legislature required that waivers of UM coverage be made only on a form designated by each insurer.
[7] Although it is unclear from the Appellants' appeal brief whether this assignment of error is limited to the Gelco UM insurance form, the record indicates (as does Home Indemnity's brief on appeal) that this argument is directed solely to the Gelco form.
[1] Effective September 1, 1987, the legislature required that waivers of UM coverage only be made on a form designated by each insurer. A 1997 amendment required the use of a standard form prescribed by the commissioner of insurance.
[2] This was a trial based on a stipulation of facts. The trial court found that Home Indemnity's forms were sufficient to comply with La. R.S. 22:1406. In support of a previous motion for summary judgment, Home Indemnity attached a letter from a vice president of GELCO stating that GELCO did not desire UM coverage; however, nothing was attached showing that GELCO was apprized of Louisiana law or its options regarding UM coverage.