STEWART, J.
hAt issue in this appeal from a summary judgment is the validity of a waiver of uninsured / underinsured motorist (“UM”) coverage on behalf of the Bossier Parish Police Jury (hereafter the “police jury”). The trial court granted summary judgment in favor of the police jury’s liability insurer, St. Paul Fire and Marine Insurance Company (“St. Paul”) and dismissed the claims of the plaintiffs, Richard and Betty Gunter (“the Gunters”), against it. The Gunters now appeal. Finding there to be a genuine issue of material fact for trial, we reverse and remand for further proceedings.
FACTS
Richard Gunter, a police jury employee, was injured on July 21, 2008, when the vehicle in which he was riding as a passenger and which was owned by the police jury was hit by another vehicle. The Gun-ters filed suit on July 17, 2009, against the driver of the other vehicle and her insurer, their own insurer, and St. Paul. They alleged that St. Paul provided UM coverage for the police jury. After answering that the police jury had rejected UM coverage, St. Paul filed a motion for summary judgment.

St. Paul’s Motion for Summary Judgment

St. Paul asserted that the police jury rejected UM coverage on a form that met all statutory and jurisprudential requirements and that was signed on September 27, 2007, by its authorized representative, William Altimus (“Altimus”), the parish administrator. In support of its motion, St. Paul offered the extensive general liability policy providing coverage for the police jury from October 1, 2007, until October 1, 2008;[1] the affidavit of |2insurance agent, David A. Montgomery, Jr., along with the signed UM rejection form; the affidavit of Winfred R. Johnston, police jury member and president in 2007; and Altimus’s deposition.
Montgomery’s affidavit states that his agency, the Montgomery Agency, Inc., worked with the police jury for 15 years for the purpose of securing and renewing its liability coverage which generally be *718 gins and ends on the first of October each year. For the “last several years,” Montgomery worked with Altimus to determine coverage needs. For several years, the police jury’s coverage had been written through St. Paul. As indicated by an entry on his calendar, Montgomery met with Altimus on September 27, 2007, at which time Altimus completed the “Uninsured / Underinsured Motorist Bodily Injury Coverage Form” by initialing the paragraph rejecting UM coverage, affixing his signature, and dating the form. The police jury did not pay a premium for UM coverage. Montgomery attested to his belief that Al-timus, as parish administrator, was authorized to act on behalf of the police jury in all respects in renewing its coverages and that the rejection of UM coverage on September 27, 2007, was consistent with the police jury’s “long-standing rejection of UM coverage in years past as well as the present.” Copies of the calendar page and the UM form signed by Altimus were attached to the affidavit.
Johnston’s affidavit states that he had been on the police jury for 10 years, that he served as president in 2007, and that he knows Altimus as a fellow police jury member and the parish administrator. The affidavit | ¡¡further states that Altimus, as parish administrator, had and has authority to work with the Montgomery Agency in connection with the annual renewals of liability coverages and to execute any documents, including the UM form, related to the renewal of coverages.
In his deposition, Altimus stated that he has been a member of the police jury since 1997 as well as parish administrator since July 15, 2002. Altimus explained that as parish administrator, he handles the daily operations of the parish on behalf of the police jury. The deposition includes the following questions by the Gunters’ counsel and replies by Altimus regarding his authority to execute contracts on behalf of the police jury:
Q. And as administrator, you’re authorized to execute contracts and documents approved by the police jury?
A. I am.
Q. Okay. Do you have any authorization to make decisions to sign contracts or documents without authorization of the police jury?
A. I do.
Q. And what governments [sic] are you provided with insofar as the police jury is concerned as to what you can and can’t sign?
A. Basically, if I get to a point where I feel that I need help or we’re treading new water, then I’ll ask the jury for a concurrence on items. Of all the things that we do in our office, I probably handle 85, 90 percent of everything as far as documentation or signing. We do have a treasurer that has certain functions that she’s responsible for. We have a secretary of the jury who is responsible for her particular area. And then, we have a president that’s elected and normally, he, or she in this particular case now, handles notices to the public; let’s see, ordinances that are approved by the jury, resolutions that are approved by the jury are always done by order of the president.
JjAltimus indicated that either he or the secretary / treasurer signed UM rejection forms. He verified his signature on the UM form signed September 27, 2007, and stated that he signed it either at his office or at the insurance agent’s office. Altimus described the yearly purchase of liability insurance as a “lengthy process,” which involves his review of the parish’s buildings and automobiles to determine what *719 coverages are needed. He stated that there are a lot of conversations about insurance until the time of renewal, but he could not recall any specific conversations that had occurred about renewing liability coverage in 2007.

The Gunters’ Opposition to Summary Judgment

The Gunters opposed summary judgment on the grounds that there are material facts in dispute concerning whether the police jury knowingly rejected UM coverage, particularly as to whether Alti-mus was authorized to reject UM coverage on its behalf. The Gunters introduced the depositions of Altimus, Montgomery, and Johnston; certified copies of the indices and excerpted pages from the minutes of police jury meetings for the years 1995 to 2006; and certified copies of the indices and minutes for the police jury meetings in 2007. The Gunters also submitted an affidavit by an Elizabeth Lambright, who claimed that she examined the original minutes from the years 1995 through 2007 and that they did not contain any resolution authorizing Altimus to act on behalf of the police jury in purchasing automobile insurance or rejecting UM coverage.
The Gunters largely base their opposition on Johnston’s deposition, which they allege is contradictory to his affidavit on the issue of whether |,.Altimus was authorized to act for the police jury in rejecting UM coverage. When the Gunters’ counsel first questioned Johnston about the affidavit, he stated that he did not recall signing the affidavit. After being shown the affidavit, he verified his signature, stated that he signed it at the police jury office, and claimed that he read it. But Johnston did not know who prepared the affidavit and did not recall giving anyone information for it.
The Gunters’ counsel then questioned Johnston about how the police jury governs. When asked whether the police jury has to act as a whole to grant someone authority to act on its behalf, Johnston answered, “Not on everything.” But Johnston did indicate that he would want the police jury to vote on a purchase that would cost half a million dollars and grant authority for someone to act on such a purchase. Johnston explained that the police jury governs by voting as a whole body, and he stated that any motions, resolutions, or ordinances passed would be reflected in the minutes of the police jury meetings.
When questioned about the police jury’s actions with regard to the purchase of “automobile insurance,” Johnston did not recall any discussions about automobile insurance since being elected to the police jury in 2000. Likewise, he had no recollection of any motion or resolution authorizing anyone, including Altimus, to purchase automobile insurance or execute a UM waiver. However, when asked about whether Altimus had the “ability” to purchase the insurance from St. Paul, Johnston answered, “I would say he would have been authorized to do it.” Johnston explained that Altimus, as parish administrator and a police juror, executes many documents. However, 16he did not know of any resolution that explains what the parish administrator can and cannot do without direct authorization by the police jury.
On examination by counsel for St. Paul, Johnston verified each statement in his affidavit, testifying that he believed each statement to be true. Johnston indicated that the parish administrator’s duties include making expenditures on behalf of the police jury. He explained that all expenditures are reviewed and approved by the finance committee, which is made up of all members of the police jury and typically meets 30 minutes before the police jury *720 meeting. Johnston was sure that the payment of insurance premiums would be included as a typical accounts payable invoice approved by the finance committee. He affirmed that Altimus as parish administrator was responsible for and had full authority to negotiate and obtain the police jury’s insurance coverages, even in the absence of a specific resolution to do so.
When asked by the Gunters’ counsel how he could say Altimus had this authority in the absence of a resolution granting such authority, Johnston explained that Al-timus had the authority because that is “the way they run the business. It’s always been run like that.” He also indicated that the police jury has an insurance committee whose job is to make insurance recommendations, and he agreed that if the police jury voted in the past to purchase auto insurance, then it should still function in the same manner.
Montgomery’s deposition did not differ from his affidavit. He stated that he met with Altimus to execute the UM form but could not recall |7specifics of the meeting. Although Montgomery stated that the police jury is his client, that he advises it on coverages and exposures, and that he works with it throughout the year on various issues and claims, he admitted that he does not generally meet with the police jury as a whole. Instead, he works with Altimus or the parish risk manager to determine coverages and to complete the application and renewal processes.
The excerpted minutes from the 1995 through 2006 police jury meetings include few actions with regard to liability insurance coverages and no mention of UM coverage. In September 1995, the police jury voted to renew its liability coverage. It obtained quotes for liability coverage from Montgomery and another agency in August 1996 and accepted Montgomery’s quote. In July 1997, it voted to employ an insurance consultant to advise it on renewal of its insurance coverages, and on September 25, 1997, it accepted the consultant’s proposal to renew general liability coverages through Montgomery. In August 1998, the police jury approved a three-year schedule for obtaining quotes for its liability insurance coverages, with the year 2000 being the next year in which it was to obtain quotes. Thereafter, the only other reference to liability insurance was on November 7, 2001, when it discussed having its general liability and workers’ compensation policies specify that the police jury would have input in selecting counsel for any legal cases.
The Gunters also introduced the minutes for 2007. These contain no reference to general liability insurance. The 2007 minutes do show that Altimus was appointed parish administrator for a one-year term on January | R17, 2007, and that the finance committee met monthly to authorize payment of the accounts payable invoices.

Trial Court’s Ruling

After hearing arguments, the trial court granted St. Paul’s motion for summary judgment. Based on the affidavits of Alti-mus and Johnston, the trial court concluded that Altimus, as parish administrator, had authority to act on behalf of the police jury in waiving UM coverage. The trial court reached this conclusion even though it believed that Johnston’s deposition testimony “may have varied” in some respects from his affidavit. The trial court also found it significant that the police jury was not questioning Altimus’s authority to have signed the UM form.
The judgment dismissing the Gunters’ claims against St. Paul was signed on March 21, 2011. The Gunters’ appeal followed.
*721 DISCUSSION
The summary judgment procedure is favored, it is designed to secure the just, speedy, and inexpensive determination of every action, and it shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Duncan v. U.S.A.A. Ins. Co., 2006-363 (La.11/29/06), 950 So.2d 544. As an appellate court, we conduct a de novo review of a summary judgment under the same criteria as used by the district court when considering whether summary judgment is appropriate. Duncan, supra. If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law, then [ flsummary judgment shall be rendered forthwith. La. C.C.P. art. 966(B). In conducting our de novo review, we consider all reasonable inferences to be drawn from the record in the light most favorable to the non-mov-ant. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764, rehearing denied, 2004-0806 (La.9/24/04), 882 So.2d 1134; Austin v. Bundrick, 41,064 (La.App.2d Cir.6/30/06), 935 So.2d 836.
UM coverage is provided for by statute (La. R.S. 22:1295)[2] and embodies a strong public policy of providing full recovery to victims who sustain damages in automobile accidents caused by a tortfea-sor who lacks adequate liability insurance. Duncan, supra. UM coverage will be read into a policy unless validly rejected. Id.; Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213. The rejection or selection of lower limits of UM coverage or economic-only coverage “shall be made only on a form prescribed by the commissioner of insurance” and the “form shall be provided by the insurer and signed by the named insured or his legal representative.” La. R.S. 22:1295(l)(a)(ii). The insurer bears the burden of proving the insured rejected UM coverage or selected lower limits. Duncan, supra; Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992).
In Duncan, supra, the supreme court identified the following six tasks required to reject UM coverage on the prescribed form:
1. Initialing the rejection or selection of the coverage chosen;
2. Filling in the amount of coverage for each person and accident if lower limits are selected;
| m3. Printing the name of the insured or legal representative;
4. Signing the name of the insured or legal representative;
5. Filling in the policy number; and
6. Dating the form.
A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected UM coverage. La. R.S. 22:1295(l)(a)(ii). As explained by the supreme court, this presumption exists because the proper completion of the prescribed form “clearly evidences the insured’s intent to waive UM coverage.” Duncan, supra.
There is no issue concerning whether the UM coverage form used by St. Paul met statutory requirements. Examination of the form shows that Altimus’s initials appear next to the paragraph that states, “I do not want UMBI Coverage.” The name of the insured, the Bossier Parish Police Jury, is printed on the form along with the policy number. The effective date of the policy, 10/01/2007, is also print *722 ed on the form. Finally, the form is signed by Altimus in the blank for the signature of the named insured or legal representative, and the date September 27, 2007, is written on the same line. The form appears to have been completed in accordance with the Duncan requirements thereby giving rise to the rebuttable presumption that the police jury knowingly rejected UM coverage. To rebut this presumption, the Gunters argue that Altimus did not have authority to reject UM coverage and that the police jury did not knowingly reject such coverage.
Inin Stewart v. Edwards, 34,435 (La.App.2d Cir.4/4/01), 784 So.2d 740, this court stated that there is no legal requirement regarding the proof of the authority for a representative to sign a UM form. The issue of whether the validity of a rejection of UM coverage depended on proof of the authority of the corporate representative to sign the UM form was addressed as dicta because the plaintiffs had stipulated to the authority of the official who signed the form. Here, there is no stipulation by the Gunters to Altimus’s authority to have signed on behalf of the police jury. While there is no legal requirement that the insurer must produce proof of a legal representative’s authority as part of its burden of proving a valid rejection of UM coverage, this does not foreclose a tort victim from challenging whether the person who signed as legal representative was authorized by the insured to reject UM coverage.
The authority to reject UM coverage on behalf of a governmental entity has been addressed in several cases with differing results. In Rainey v. Gerarve, 461 So.2d 464 (La.App. 5th Cir.1984), writ denied, 463 So.2d 601 (La.1985), the court determined that the administrator of the state’s Division of Property and Casualty Insurance had authority to reject UM coverage for the Department of Public Safety (“DPS”). Although the administrator did not have written or formal authorization from DPS, all of DPS’s polices had been purchased through the administrator’s office, and he had signed the UM waiver forms each year. Testimony also indicated that the administrator discussed DPS’s insurance needs with its general counsel, who in turn discussed the issue with the heads of DPS. Thus, the [^administrator purchased policies that all concerned had agreed on and approved.
The fifth circuit in Walker v. Nobile, 606 So.2d 7 (La.App. 5th Cir.1992), writ denied, 607 So.2d 569 (La.1992), found that a payroll officer had apparent authority to reject UM coverage on behalf of Jefferson Parish and that the parish ratified the rejection each year. Both the parish and the insurer asserted that the parish never bought UM coverage, except for the parish president’s vehicle. The payroll officer, who worked for the parish for 34 years, who had assumed many duties of the finance director, and who was the custodian of the insurance policies, signed the rejection forms each year with the knowledge and approval of the parish’s executives and insurance committee.
In Desormeaux v. Lalonde, 578 So.2d 226 (La.App. 3d Cir.1991), writs denied, 581 So.2d 705 (La.1991) and 581 So.2d 706 (La.1991), the court affirmed a trial court finding that the City of Lafayette’s risk manager was not authorized to reject UM coverage. The ordinance creating the position of risk manager did not make the position the city’s legal representative in rejecting UM coverage, there was no other evidence that the city had granted actual authority for the risk manager to reject UM coverage, that he had the apparent authority to do so, or that the city had ratified his actions.
*723 In Longman v. Allstate Ins. Co., 635 So.2d 343 (La.App. 4th Cir.1994), the court found that the Plaquemines Parish insurance manager did not have authority to reject UM coverage on behalf of the parish. The | ^insurer argued that the insurance manager’s mandate to administer the parish’s insurance needs implicitly included the right to reject UM coverage and that a resolution authorizing the purchase of liability insurance granted him the legal authority to do so. The manager testified that he rejected UM coverage because the parish resolution did not authorize its purchase. The councilman who introduced the resolution also testified that the parish had not intended to purchase UM coverage. After examining the resolution, which was silent as to UM coverage, the court concluded that the insurance manager had no authority to reject UM coverage without a specific resolution by the parish council to reject such coverage. Moreover, there was no other evidence showing that the parish authorized its insurance manager to reject UM or that he had the apparent authority to do so.
In these cases, which all appear to have involved trials on the merits rather than motions for summary judgment, the courts looked at whether the person who signed the form had either actual or apparent authority to reject UM on behalf of the governmental entity. In Rainey, supra, and Walker, supra, where apparent authority was found as the basis for rejecting UM coverage, there was some evidence of knowledge or approval on the part of the governing entity about the decision to reject UM coverage.
In this case, the 2007 minutes show that Altimus was again appointed parish administrator for a one-year term, but nothing in the minutes or record indicates the duties or scope of authority conferred on the parish administrator. Neither Alti-mus nor Johnston could point to the basis of Altimus’s authority to act on behalf of the police jury in rejecting UM | ^coverage other than the fact of his being the parish administrator. Altimus simply claimed that he could make decisions on some contracts without specific authorization by the police jury and that he seeks its concurrence on items when “I feel that I need help or we’re treading new water.” Johnston finally explained that Altimus had the authority absent any specific resolution because that is “the way they run the business. It’s always been run like that.” Moreover, the 2007 minutes do not indicate any action taken by the police jury with regard to purchasing liability insurance or rejecting UM coverage. References in the minutes to the finance committee’s monthly approval of the payment of unspecified invoices does not indicate that the police jury authorized Altimus to reject UM coverage. At most, the actions of the finance committee suggest that it approved payment of the insurance premium. The record does not indicate what role, if any, the insurance committee plays in determining whether to reject UM coverage.
Only conclusory statements support the claim that Altimus, as parish administrator, had authority to reject UM coverage on behalf of the police jury. The record does not show that Altimus acted with the agreement, knowledge, or approval of the police jury in rejecting UM coverage for the policy period at issue. At most, the record contains vague references by Montgomery and Altimus to discussions during the “lengthy process” by which Altimus determined the police jury’s coverage needs each year. Montgomery indicated that he primarily dealt with Altimus or the unnamed parish risk manager, not the police jury as a whole. Additionally, nothing in Altimus’s testimony or affidavit indi *724 cates that he ever discussed the 11srejection of UM coverage, or even the parish liability coverages, with his fellow police jury members. Johnston, the police jury president in 2007, could not recall any discussions about liability coverage or UM coverage then or during his years on the police jury. Viewing the record in the light most favorable to the non-movant and considering the strong public policy favoring UM coverage, we must conclude that there are genuine issues of material fact as to whether Altimus was authorized, by actual or apparent authority, to reject UM coverage on behalf of the police jury as it legal representative and whether the police jury knowingly rejected UM coverage for the relevant policy period.
CONCLUSION
For the reasons stated, we reverse the summary judgment in favor of St. Paul and remand this matter for further proceedings. Costs of appeal are assessed against St. Paul.
REVERSED AND REMANDED.
BROWN, Chief Judge, dissents and assigns written reasons.
CARAWAY, J., dissents for the reasons assigned by BROWN, C.J.

. The policy provided by St. Paul is a liability policy that protects against a variety of losses that might befall a municipality. Automobile insurance is just one of the many coverages provided in the policy. The premium for all the coverages for the October 1, 2007, to October 1, 2008, policy period was $668,929.

. By Acts 2008, No. 415, § 1, effective January 1, 2009, the provisions of Title 22 were amended, reenacted and redesignated into a new format and numbering scheme. The former UM coverage provision, La. R.S. 22:680, was redesignated as R.S. 22:1295.